**Fontella ELLIFRITS, Plaintiff,**

v.

**Sandy Thomas SWEETS, Defendant,**

**Michigan Mutual Liability Company, a corporation, Intervening Plaintiff,**

and

**William C. Bland, Intervenor.**

**No. 13061-4.**

United States District Court
W. D. Missouri, W. D.

March 19, 1963.

Supplemental Opinion April 8, 1963.

Bland & Newberry, Springfield, Mo., Shook, Hardy, Ottman, Mitchell & Bacon, by William W. Shinn and David H. Clark, Kansas City, Mo., for plaintiff.

Sprinkle, Carter, Sprinkle & Larson, Kansas City, Mo., for defendant.

Leo Gotschall, Joseph B. Bott, Kansas City, Mo., for intervening plaintiff, Michigan Mut. Liability Co.

BECKER, District Judge.

This case was begun as a simple suit for damages under the Missouri Wrongful Death Act, section 537.080, RSMo 1959, V.A.M.S. The plaintiff was a widow of a deceased employee covered by workmen's compensation insurance issued by the intervenor, Michigan Mutual Liability Company (hereinafter referred to as "Michigan Mutual"). The suit was against a third party tort feasor and motor vehicle operator, the defendant Sweets, whose financial responsibility was limited to the maximum coverage of a liability insurance policy issued by United States Fidelity and Guaranty Company (hereinafter referred to as "U.S.F. & G.").

As a result of an unfortunate lack of cooperation on the part of the workmen's compensation insurer and equally unfortunate misconceptions concerning the rights and responsibilities of the workmen's compensation insurer and the employee's dependents in respect to a third party action under the Missouri Workmen's Compensation Act, the disposition of this suit and of the proceeds of this

action has been unnecessarily complicated. The relevant facts are as follows:

In 1960, plaintiff and her husband, Donald Ray Ellifrits, now deceased, lived in Strasburg, Missouri. On August 31, 1960, while acting in the scope of his employment by Brick Trucking Service Company, plaintiff's husband was killed as a result of the negligent operation of a Buick sedan by the defendant Sweets. Plaintiff's husband at the time of his death was 24 years of age; he was survived by the plaintiff and two children. One of these children was born after his death.

Plaintiff's brother, Denby Rutledge, was a friend and acquaintance of the intervenor William C. Bland, a practicing lawyer of Springfield, Missouri. When news of the death of plaintiff's husband was received on the day of the casualty, plaintiff's brother, with plaintiff's approval, advised the intervenor Bland of the death, and arranged for the intervenor Bland to represent the plaintiff in the investigation of the occurrence and in the recovery of damages resulting from the death of the plaintiff's husband. This arrangement was later made the subject of a written contract for representation of the plaintiff upon a contingent basis providing for the payment to the intervenor Bland of one-third of any recovery made against the defendant herein as a third party tort feasor.

With extraordinary diligence the employed attorney and intervenor Bland immediately drove over a hundred miles to the scene of the casualty in Clay County, Missouri. There he interviewed the investigating highway patrolman. On the same day he employed an investigator to gather evidence and locate witnesses. In the course of this initial investigation he also thoughtfully dictated a memorandum to the widow covering funeral arrangements and the veteran's benefits to which the widow might be entitled, an act of kindness for which he cannot be compensated in this proceeding.

In this connection, attorney intervenor Bland was also employed to represent the plaintiff in the investigation and prosecution of her claim for benefits under the Missouri Workmen's Compensation Act. The intervenor Michigan Mutual was in due course advised of his representation of the plaintiff in respect to her claim for compensation.

As a result of the investigation and pursuant to his employment, attorney intervenor Bland instituted this suit for damages against the defendant Sweets, a resident of Atlantic, Iowa. Service was secured under the Missouri Non-Resident Motorist Service Act, section 506.210 RSMo 1959, V.A.M.S. At the hearing on this matter the intervenor Michigan Mutual disclaimed any knowledge of the activities of attorney intervenor Bland in the investigation made by him personally and through others in the interest of prosecuting the third party claim. However, it is established that sometime in October of 1960, counsel for Michigan Mutual learned that the plaintiff through her attorney Bland had filed this suit for wrongful death in Clay County, Missouri. (It was later removed to this Court.) By this time Michigan Mutual had turned over the management of all its interests as liability insurer, and as potentially subrogated insurer to its regular counsel resident in Kansas City, Missouri, acting under the supervision of and in cooperation with its claims manager, Mr. Shirk, resident in Kansas City. A perfunctory investigation of the casualty was made by Michigan Mutual, but none of the results of its investigation were made available to the plaintiff or her counsel in the prosecution of this action.

Michigan Mutual and its counsel have taken the position that Bland as attorney for the plaintiff Ellifrits in the wrongful death action against the third party tort feasor was representing the plaintiff only in respect to the excess which might be recovered from the third party above and beyond the subrogation interests of the Michigan Mutual Liability Company. It has consistently adhered to this view throughout these proceedings as is indicated by the testimony of its claim

manager and its attorney in the hearing on the claims to the funds in the registry of the Court.

Although there was never any basis for denial of workmen's compensation coverage or any substantial reason for deferring the entry of an award and commencement of payments thereunder to the plaintiff under the Workmen's Compensation Laws of Missouri, the matter was handled in a leisurely fashion, and payments were not commenced until sometime after August 1, 1961, the date upon which a corrected final award was belatedly entered. A final award containing a technical error had been entered on May 5, 1961. To put it mildly, the service of Michigan Mutual in processing the Workmen's Compensation claim, and in procuring entry of the final award was not marked by extraordinary diligence.

The recovery in this action of the maximum statutory limit of $25,000 against the third party tort feasor would have been more than justified by the expectancy and earnings of plaintiff's husband at the time of his death. In an effort to recover the statutory limit the attorney intervenor Bland undertook to investigate the financial responsibility of the defendant Sweets, the third party tort feasor, at his residence in the State of Iowa by employing an investigator for that purpose. If these efforts had been fruitful, the subrogation interests of Michigan Mutual, as well as the interests of plaintiff, would have been advanced.

In the meantime, Michigan Mutual through its claims manager and counsel had learned of the pending suit, and that $10,000 was the limit of liability of the insurer U.S.F. & G.

Without knowledge of the plaintiff or her attorney Bland, conversations were had with U.S.F. & G. by Michigan Mutual from which Michigan Mutual's adjuster and counsel learned that U.S.F. & G. was willing to pay in settlement of this action, first, $7,500, and later, $8,500. None of this information was communicated to the plaintiff or her counsel in this case. However U.S.F. & G. was conducting parallel negotiations with plaintiff's counsel, apparently without knowledge of Michigan Mutual.

These proposals to settle made in February of 1961 and in April of 1961 were obviously the result of the prosecution of this action originally commenced in Clay County. Later in 1962 U.S.F. & G. offered the intervenor attorney Bland $9,500 in settlement. Michigan Mutual's claims manager and attorney were unaware that proposals of settlement had been made to the plaintiff through her counsel and that the sum of $9,500 had been offered in settlement until advised by plaintiff's attorney in May or June, 1962. It is clear that no effort was made by Michigan Mutual to communicate with plaintiff or her counsel concerning the settlement conversations with U.S.F. & G.

Attorney intervenor Bland prosecuted this action through the employment of discovery procedures until finally it became evident that U.S.F. & G. would not settle with Michigan Mutual alone or with the plaintiff alone. On September 13, 1961, Michigan Mutual moved to intervene in this action, stating that it was legally liable under the final award in the case to pay $15,500 under the Workmen's Compensation Law of the State of Missouri; that it was subrogated to the rights of the plaintiff's widow herein and that the representation of the applicant's interests "is or may be inadequate, and applicant is, or may be, bound by a judgment in the action," and "your applicant would be adversely affected by a distribution or other disposition of such property in the custody of the Court or an officer thereof" in the event of a recovery by the plaintiff. In the meantime, plaintiff and her counsel had come to the conclusion that the case could not be settled because of conflict with Michigan Mutual over application of the proceeds of settlement. Obviously U.S.F. & G. did not intend to settle without consent of Michigan Mutual.

This required plaintiff to employ Kansas City counsel for the purpose of having resident counsel assist in the trial.

Subsequently at a pre-trial conference in this Court, Michigan Mutual's motion to intervene was sustained on a finding that representation by counsel for the plaintiff against the third party tort feasor, defendant Sweets, was adequate, but that there was a conflict of interest between plaintiff and Michigan Mutual in respect to the receipt and division of the proceeds of recovery which warranted intervention by Michigan Mutual.

At this conference the Court determined that U.S.F. & G. was willing to pay its limit of $10,000 in settlement of this claim, and that there was no financial responsibility above and beyond the insurance available. It was further determined that plaintiff and Michigan Mutual were unable to agree upon the division of the proceeds of the recovery. At the suggestion of the Court the parties agreed to prepare and submit stipulations providing for settlement of the case for the limit of $10,000 and for the safekeeping of the proceeds of the settlement pending final adjudication of the rights of the plaintiff and Michigan Mutual and any other interested parties in the proceeds of settlement.

This settlement was consummated by the entry of a judgment in favor of the plaintiff and the intervening plaintiff of the sum of $10,000 and costs, which said sum was ordered paid into the registry of the Court for the use and benefit of the plaintiff and intervening plaintiff. The judgment further provided for full and final discharge of the defendant tort feasor and its insurer.

On motion of the intervening insurer to dismiss this cause, or for stay of proceedings, pending the adjudication of its rights to the funds in the registry of the Court by the Missouri Workmen's Compensation Commission, the Court entered an order providing for determination by this Court of the rights to the proceeds of the judgment in the registry of the Court. (Ellifrits v. Sweets (W.D.Mo.)

Now that the evidence of the claimants to the funds has been heard, the Court finds that plaintiff and her counsel, in prosecuting this wrongful death action, were representing the interests of the Michigan Mutual as well as her own interests, as the trustee of an express trust, under the Missouri law. Knox v. Land Construction Co., Mo.App., 345 S.W.2d 244; O'Hanlon Reports, Inc. v. Needles, Mo.App., 360 S.W.2d 382; Jenkins v. Westinghouse Electric Co. (W.D. Mo.) 18 F.R.D. 267.[1] The Court further finds that from the outset and consistently until the present, Michigan Mutual and its counsel have proceeded on the

1. The most recent summary of the Missouri rule is contained in the O'Hanlon case, supra, 360 S.W.2d 1. c. 385–386, in the following language.

"By Section 287.150 the employer is not subrogated to the *whole* claim of the employee. In fact, he is not even subrogated to the employee's whole claim for lost wages. His right of subrogation is limited to the compensation paid or payable. Nor does the statutory subrogation create two separate causes of action, as did the assignment in the General Exchange case. Section 287.150 does not take away from the employee his common law right of action against the third party tortfeasor, Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913; Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153. Regardless of the employer's rights of subrogation, the employee remains a real party in interest, and may bring a suit for *all* of his damages. McKenzie v. Missouri Stables, Inc., supra. In fact, he must do so, for he may not defeat the employer's right to subrogation by only suing for what he claims to be noncompensable elements of damages. Sommers v. Hartford Acc. and Indem. Co., Mo.App., 277 S.W.2d 645. In short, either the employee or the employer (or both together) may sue the negligent third party for all elements of the employee's damages, and whichever brings the action becomes the trustee of an express trust for the benefit of the other. General Box Co. v. Missouri Utilities Co., supra [331 Mo. 845, 55 S.W.2d 442]; McKenzie v. Missouri Stables, Inc., supra. Thus the right of subrogation given to the employer by Section 287.150 is not analogous to that acquired by the insurance carrier in the General Exchange case. Actually, while the word 'subrogated' is used in Section 287.150, as pointed out in McKenzie v. Missouri Stables, Inc. [225 Mo.App.

erroneous assumption that the interest of plaintiff and her counsel in prosecuting this action was only to recover sums in excess of the interests of Michigan Mutual in the cause of action against the third party; that the recovery in this cause was in truth and in fact a result of the efforts of plaintiff and her counsel, and not a result of the efforts of Michigan Mutual; that in fact no legal action was taken by Michigan Mutual in connection with this cause of action until the statutes of limitation (section 537.-100, RSMo 1959, V.A.M.S.) had run and then only by intervention in this action to protect its interests in the recovery.

The Court further finds that under all the circumstances in this case a contingent attorney's fee of one-third of the total recovery is a fair and reasonable fee allowance to the plaintiff as an expense under the Missouri Workmen's Compensation Act. Knox v. Land Construction, 345 S.W.2d 244. In a case of this type where there is cooperation between the workmen's compensation insurer and the dependents of the employee in the prosecution of the third party action, and settlement without preparation for trial and without employment of local trial counsel, one-fourth of the recovery would be a reasonable fee. The additional difficulties in the prosecution of this action, caused by lack of cooperation of Michigan Mutual, are sufficient to justify the fee of one-third of the recovery. As stated in the memorandum opinion heretofore rendered, Ellifrits v. Sweets, (W.D.Mo.) this Court has jurisdiction to determine the rights of the parties in the funds in the registry of the Court. To the considerations there stated, it should be added that the intervenor, Michigan Mutual, has voluntarily and at its own insistence, been made a party to this cause in order to protect its rights in the recovery herein. Independently of all other considerations, this action resulting in an order permitting intervention has subjected its rights in and to the

---

64], 34 S.W.2d 136, 141, * * * it is indemnity, and not true subrogation, for which the act provides."

In the Knox case, supra, the widow of the employee recovered from a third party tort feasor for the death of the employee. The widow was allowed her attorney's fees of 50% and expenses by the Industrial Commission. This allowance was approved by the Court of Appeals. In this connection it is noted that Section 287.260, V.A.M.S. provides in part: "All attorney's fees for services in connection with this chapter shall be subject to regulation by the commission and shall be limited to such charges as are fair and reasonable and the commission shall have jurisdiction to hear and determine disputes concerning the same." (The chapter referred to is that containing the Missouri Workmen's Compensation Act.)

Undoubtedly the Commission has jurisdiction to hear such controversies concerning attorney's fees in a case such as this, but the statute does not attempt to confer exclusive jurisdiction to do so. The jurisdiction is concurrent with that of this Court in a case such as this. It is not necessary to decide whether Missouri could by statute deny to this Court the right to determine claims to funds in the registry of this Court. It has not undertaken to do so as the statute is construed.

Moreover, the insurer Michigan Mutual has voluntarily intervened in this cause for the express purpose of protecting its rights in the proceeds of this action. Having done so it is in no position to question the power of this Court to adjudicate its rights. Under the rule most favorable to Michigan Mutual, the right to question the propriety of the determination of rights in the fund in question does not exist because: (1) the Court's "real jurisdiction" over this action exists and is not questioned, 4 Moore, Federal Practice ¶ 24.16 [2] pp. 112–14; (2) Michigan Mutual had no absolute right to intervene and is subject to the subordination rule, Jenkins v. Westinghouse Electric Co. (W.D.Mo.) 18 F.R.D. 267, 4 Moore, Federal Practice ¶ 24.16 [3] pp. 114–16; and (3) the orders leading to the settlement of this case and the deposit of the funds in the registry of the Court were entered by consent of all parties.

It is true that this Court might defer action and permit litigation of the rights in the fund through the Commission or the state court system. This might take years. In the meantime this widow will be without funds in view of the showing at the trial that the monthly payments on the award by the Commission had been suspended by Michigan Mutual.

'funds in question to a determination by this Court. Therefore it is

Ordered and adjudged that the petitioner William Bland have and recover from the sum of $10,000 in the registry of the Court, the sum of $3,200 in full satisfaction of any and all claims or liens for prosecution of this action, out of which he shall discharge obligations for attorney's fees to resident Kansas City counsel. It is further

Ordered and adjudged that intervenor William Bland have and recover out of the sum of $10,000 in the registry of this Court, the sum of $400 for expenses incurred in the prosecution of this action. It is further

Ordered that a form of judgment for disposition of the remaining sum of $6,400 on deposit in the registry of this Court be settled on notice, consistently herewith, under Rule 6(c) of the Court. It is further

Ordered that said judgment and order provide for payments and credits in accordance with section 287.150, V.A.M.S., governing the liabilities and rights of the surviving defendants, the employer and the insurer, in the proceeds of a wrongful death action in which recovery is effected by the dependent widow.

### SUPPLEMENTAL MEMORANDUM, FINDINGS OF FACT AND FINAL JUDGMENT

Now on this 29th day of March, 1963, comes the plaintiff by her counsel and comes the intervenor Michigan Mutual Liability Company by its counsel.

Thereupon the plaintiff acknowledges that the intervenor Michigan Mutual has paid benefits under the Workmen's Compensation Act of Missouri as follows:

#### Prior to October 26, 1962

| | |
|---|---|
| Burial expense | $ 500.00 |
| Award to dependents to and including October 25, 1962, 112 weeks at $45 per week | 5,040.00 |
| | $5,540.00 |

#### On March 29, 1963

| | |
|---|---|
| Award to dependents from October 25, 1962, to and including March 21, 1963, 21 weeks at $45 per week | $ 945.00 |
| Total paid by the intervenor Michigan Mutual to date | $6,485.00 |

Upon condition [1] that the intervenor Michigan Mutual continue the payments under the Corrected Final Award of the Industrial Commission of Missouri entered on August 1, 1961, without further legal proceedings, orders, or judgments, unless (1) this judgment shall be reversed or modified on appeal and a judgment or order entered relieving said intervenor of the obligation to make payments as provided in said Corrected Final Award, or (2) unless the Corrected Final Award shall be modified according to law, for some reason other than the alleged lack of jurisdiction of this Court to adjudicate the rights in the proceeds of this action, it is found that the inter-

---

[1]. Michigan Mutual suspended weekly payments ordered by the Industrial Commission of Missouri apparently because of the controversy over settlement and distribution of proceeds of settlement in this case. This suspension of payment was unwarranted and prejudicial to the plaintiff's widow and her children. In view of this record some measures are taken in this judgment to protect the plaintiff and her children from future suspension of payments. Therefore the distribution to Michigan Mutual of the remaining proceeds is accompanied by the conditions and injunction set forth herein. There is pending in the State Court a proceeding challenging the abstention of the Commission on subrogation rights and attorney's fees in favor of this Court. Under the record some protection is required for the plaintiff and her children against future suspension of payments and future expenses of litigation which may be allowable to her. Michigan Mutual has an undoubted right to appeal this action, but not to suspend compliance with the award of weekly benefits to plaintiff and her children, according to the tenor of the award of the Industrial Commission which has become final long ago.

venor Michigan Mutual is entitled under the law of Missouri to the sum of $6,400 remaining in the registry of this Court under the said intervenor's statutory right of subrogation or indemnity on account of the payments heretofore made as recited hereinabove.

It is further found that the intervenor Michigan Mutual is entitled to no further credits on account of the proceeds of this action. Therefore it is hereby

Ordered and adjudged that the intervenor Michigan Mutual is entitled to payments from the registry of this Court of the sum of $6,400 remaining in the registry of this Court from the proceeds of this action. It is further

Ordered and adjudged that the Clerk pay to the intervenor Michigan Mutual said sum of $6,400, upon oral application by said intervenor and the filing of a receipt therefor which may be executed by said intervenor's attorney of record. It is further

Ordered and adjudged that intervenor Michigan Mutual be, and it is hereby, enjoined from discontinuing further payments on the Corrected Final Award of the Industrial Commission of Missouri entered August 1, 1961, unless (1) this judgment shall be reversed or modified on appeal and a judgment or order entered relieving said intervenor of the obligation to make payments as provided in said Corrected Final Award, or (2) unless the Corrected Final Award shall be modified according to law, for some reason other than the alleged lack of jurisdiction of this Court to adjudicate the rights in the proceeds of this action. In accordance with the interlocutory judgment herein filed March 19, 1963 (dated March 1, 1963) it is further

Ordered and adjudged that the intervenor William C. Bland have and recover from the sum of $10,000 in the registry of the Court, the sum of $3,200 in full satisfaction of any and all claims or liens for prosecution of this action, out of which he shall discharge obligations for attorney's fees to resident Kansas City counsel. It is further

Ordered and adjudged that intervenor William C. Bland have and recover out of the sum of $10,000 in the registry of this Court, the sum of $400 for expenses incurred in the prosecution of this action. It is further

Ordered and adjudged that the plaintiff have and recover of and from the intervenor Michigan Mutual the costs accruing herein since September 19, 1962. It is further

Ordered and adjudged that the Court retain jurisdiction for the purposes of securing compliance with the orders and judgment herein including the injunction issued to the intervenor Michigan Mutual, and for the purpose of allowing such other expenses and attorney fees to which the plaintiff may become entitled by subsequent proceedings herein, if any.